IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                   Case Nos.:      3:07cr136/LAC/EMT
                                                      3:11cv35/LAC/EMT
ANTONIO AKEL

---

## ORDER, REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and supporting memorandum of law (docs. 156, 160).[1] The Government filed a response (doc. 164), and Defendant filed a reply (doc. 174). Defendant has also filed a motion to amend his pending motion to vacate (doc. 187), to which the Government has responded (doc. 190). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b),

---

[1] The exhibits referenced by Defendant in the memorandum of law were not included with the original memorandum of law. In the Government's response it states in a footnote that it was "making its response without any of these exhibits due to a desire not to prolong this matter any longer than it already has been due to a lack of diligence on the part of the defendant and his counsel to make sure referenced documents in pleadings have been provided to the Court and to the government" (doc. 164 at 15 n.6).

## PROCEDURAL BACKGROUND[2]

Defendant was charged in a six-count indictment, returned on November 27, 2007, with: Count One– conspiracy to possess with intent to distribute five hundred grams or more of cocaine and Methylenedioxymethamphetamine Hydrochloride ("MDMA"); Count Two– possession with intent to distribute 500 grams or more of cocaine on a date certain; Count Three– distribution of cocaine and MDMA on a date certain; Count Four– distribution of MDMA on a date certain; Count Five– possession of a firearm in furtherance of a drug trafficking crime; and Count Six– possession of a firearm by a convicted felon (doc. 1). The charges arose from two controlled sales of MDMA or MDMA and cocaine to a confidential informant ("CI") in May and July of 2007, a trash pull at Defendant's residence during which law enforcement discovered evidence of marijuana distribution, and a subsequent search of Defendant's residence during which law enforcement discovered actual marijuana and were present when FedEx delivered a package containing one kilogram of cocaine (*see* doc. 150 at 10–14).

The Government filed a Notice of Enhancement Information (doc. 16). The notice identified three 1998 burglary convictions, which convictions occurred on the same day, although the underlying burglaries occurred on different occasions (*id.*).

Attorney Barry Beroset made an appearance on January 2, 2008 (doc. 19) but moved to withdraw less than two weeks later, citing irreconcilable differences with his client (docs. 23, 25).[3] After a hearing the court allowed Mr. Beroset to withdraw, and retained counsel Randall Etheridge filed a notice of appearance on January 22, 2008 (doc. 30).[4] A superseding indictment, returned on January 23, 2008, charged Defendant (and in some charges, one co-Defendant) as follows: Count

---

[2] Detailed statements of facts describing the offense conduct are set forth in the Government's brief on direct appeal and in the Eleventh Circuit's opinion in United States v. Akel, 337 F. App'x 843 (11th Cir. 2009) (doc. 150) and will be set forth herein only as necessary.

[3] Randall Etheridge, Esq., Defendant's subsequent attorney, noted in his affidavit filed in response to Defendant's § 2255 motion that Defendant fired Mr. Beroset due to his refusal to pursue a motion to suppress (doc. 164-1 at 2).

[4] Defendant's father retained counsel to represent Defendant at trial and on appeal (PSR ¶ 107; *see also* doc. 126 at 29), although Defendant ultimately proceeded pro se on appeal.

One– conspiracy to possess with intent to distribute cocaine, MDMA, and marijuana; Count Two– possession with intent to distribute cocaine and marijuana on a date certain; Count Four[5] – distribution of cocaine and MDMA on a date certain; Count Five– distribution of MDMA on a date certain; Count Six– possession of a firearm in furtherance of a drug trafficking crime; and Count Seven– possession of firearms by a convicted felon (doc. 34).

Defendant filed a motion to suppress all evidence obtained as a result of the search and seizure at his residence in Navarre, Florida, on November 3, 2007 (docs. 52, 53), which will be discussed in greater detail below. Defendant raised multiple issues in his motion to suppress, arguing, among other things, that the affidavit in support of the warrant failed to establish probable cause to search his home as there was no nexus between his home and the alleged controlled buys that occurred in May and July of 2007; that even if the information in the affidavit was valid, it was stale at the time the search warrant was issued on November 2, 2007; that the trash pull did not establish probable cause; and that the affidavit in support of the search warrant was lacking in indicia of probable cause (doc. 52).[6] The court denied the motion after response from the Government and a hearing (*see* docs. 60, 69, 70, 76–77).

Defendant orally moved to continue the trial before the court conducted voir dire (doc. 81). The court denied the motion (doc. 83). The jury trial took place from March 17–20, 2008, following which the jury convicted Defendant on Counts One, Two and Seven and acquitted him of Counts Four, Five and Six (doc. 93). The court entered a judgement of acquittal on those counts (doc. 97). The jury found that with respect to Count One, the conspiracy involved 500 grams or more of cocaine as well as a mixture or substance containing MDMA and a mixture or substance containing a detectable amount of marijuana (doc. 93 at 1–2). The jury found that the offense conduct charged in Count Two involved only marijuana and not cocaine (*id*. at 2).

The Presentence Investigation Report ("PSR") was disclosed to the defense on May 7, 2008 (doc. 107). Using drug equivalency tables, Defendant was held accountable for 1,594.85 kilograms of marijuana (PSR ¶¶ 41–49, 60). His base offense level was 32 (PSR ¶ 60). Defendant received

---

[5] Defendant was not charged in Count Three.

[6] The challenged affidavit is appended to Defendant's motion to amend (doc. 187 at 29–34).

a two-level adjustment pursuant to § 2D1.1(b)(1), for possessing a dangerous weapon (PSR ¶ 61); a four-level adjustment for his leadership role pursuant to § 3B1.1(a) (PSR ¶ 63); and a two-level adjustment for obstruction of justice pursuant to § 3C1.1 (PSR ¶ 64).  Thus, his total offense level was 40 (PSR ¶ 67).  Defendant was also designated an Armed Career Criminal due to having been convicted of three prior violent felony offenses (burglaries) (PSR ¶ 68).  Defendant had eight criminal history points, but his criminal history category became VI pursuant to § 4B1.4(c)(2) (PSR ¶ 78). With a total offense level of 40 and a criminal history category of VI, the applicable guidelines range was 360 months to life (PSR ¶ 113).  However, this range became 360 to 480 months due to the statutory maximum term of imprisonment of 40 years (*id*.).

Defendant objected to the drug weight, each of the adjustments, and the criminal history category being assessed as VI due to his Armed Career Criminal status (PSR Addendum ¶¶ 121–130). He also asserted that the PSR should have identified factors supporting a downward departure, pursuant to § 4A1.3(b)(1) (PSR Addendum ¶¶ 131–132).

The Government filed a request that the court impose a term of imprisonment at the high end of the guidelines (docs. 108, 110).  It argued that a high-end sentence was warranted because Defendant's criminal history was not accurately captured under the Guidelines range set out in the PSR and due to Defendant's repeated and historic use of violence and firearms (doc. 110 at 3).

At sentencing, Defendant was represented by attorneys Randall Etheridge and Marcia Shein, although Ms. Shein handled the majority of the sentencing matters (doc. 126 at 3).  Defendant withdrew his objections to the obstruction of justice enhancement as well as the addition of two points to his criminal history score as a result of Defendant having committed the crimes within two years of being released from custody (*id*.).  Counsel argued that the armed career criminal enhancement should not apply (*id*. at 4–6) and argued against the application of the four-level enhancement for Defendant's role in the offense, maintaining that a two-level enhancement would be more accurate, if in fact any role enhancement was appropriate (*id*. at 6–7).  The Government disagreed (*id*. at 10),

and the court overruled the objections (*id.* at 12–13).[7] There was discussion about Defendant's request for a downward departure based on possible psychological disturbances (doc. 126 at 14–26).

The court sentenced Defendant to a term of 480-months imprisonment on each count, with the terms to run concurrently with each other, followed by five years of supervised release (doc. 117; doc. 126 at 27–28). The court noted that the sentence was at the top of the guideline range for Counts One and Two based on "aggravating factors, [and the] history and characteristics exhibited by the defendant" (doc. 126 at 27). The court further noted that it had considered all of the § 3553(a) factors and considered the sentence imposed to be "reasonable and necessary" (*id.*). It also specifically stated that it had not ignored or failed to consider anything Defendant had presented, but it merely opined that the other § 3553(a) factors, and particularly the need to protect society from further criminal conduct, outweighed those considerations (*id.* at 28–29).

Although counsel had been retained to represent him, Defendant ultimately filed a pro se brief on appeal (doc. 164-1 at 9–10, 61–126, 128–208). The Eleventh Circuit Court of Appeals affirmed his conviction and sentence (doc. 150; United States v. Akel, 337 F. App'x 843 (11th Cir. 2009)). The Eleventh Circuit held:

– Defendant failed to show any statement made in the search warrant affidavit was false or, if false, that such statement was made intentionally or recklessly (doc. 150 at 27);

– The search warrant affidavit was not stale and was sufficient to establish probable cause (*id.* at 28–29);

– The prosecutor did not knowingly use perjured testimony before the grand jury (*id.* at 30–31);

– Defendant failed to establish that co-defendant Rudinsky's testimony was involuntary and/or perjured, and Defendant was not entitled to a new trial on this basis (*id.* at 32–34);

– The district court did not err in refusing to admit a photograph for which Defendant had failed to provide sufficient foundation (*id.* at 34–35);

---

[7] The court registered surprise at the jury's verdict on Count Six, saying that the outcome could not have been more clear to the court, and noting that perhaps the incongruous verdict was a jury compromise because the jury had struggled to come to a verdict (doc. 126 at 12).

– There was no error or undue coercion in the district court's <u>Allen</u>[8] charge (*id.* at 35–37);

– The evidence was sufficient to support a conspiracy conviction (*id.* at 38–39);

– The four-level adjustment for Defendant's leadership role in the offense was properly applied (*id.* at 39–41);

– The two-level adjustment for Defendant's possession of a firearm during the offense was properly applied (*id.* at 41–42);

– Defendant was properly considered an armed career criminal (*id.* at 42–43);

– The application of both U.S.S.G. § 2D1.1(b)(1) and § 4B1.4 did not constitute impermissible "double counting" (*id.* at 43–44); and,

– Defendant's sentence was both procedurally and substantively reasonable (*id.* at 45–46).

The Supreme Court denied certiorari on January 19, 2010 (doc. 152).  The instant motion was timely filed.  In the present motion, Defendant separates his claims for relief into four grounds, three of which contain multiple sub-parts.  In his motion to amend, Defendant expands on several of the claims raised in his original motion and purports to add one additional claim.  The Government opposes the § 2255 motion in its entirety.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the

---

[8] <u>Allen v. United States</u>, 164 U.S. 492, 501 (1896).

alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of

counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  <u>Strickland</u>, 466 U.S. at 686; <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000); <u>Darden v. United States</u>, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying <u>Strickland</u>, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  <u>Strickland</u>, 466 U.S. at 697; <u>Brown v. United States</u>, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 688; *see also* <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." <u>Hammond v. Hall</u>, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting <u>Strickland</u>, 466 U.S. at 689); *see also* <u>Chandler v. United States</u>, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  <u>Strickland</u>, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's

error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

**Ground One:**

### (1) Counsel's Failure to Properly Argue for Suppression

Defendant argues that trial counsel was constitutionally ineffective because he did not "properly" argue for suppression. He offers three arguments in support of this assertion: (1) counsel failed to argue controlling precedent; (2) counsel failed to argue that the trash pull was illegal; and (3) counsel failed to demonstrate that the affidavit in support of the search warrant was false. The Government argues that this issue is procedurally barred because the motion to suppress and the suppression hearing were fully litigated on appeal.

In the motion to suppress, counsel argued that (1) the affidavit for the search warrant failed to establish probable cause to search 9518 Pouder Lane; (2) the two alleged controlled buys on May 31, 2007 and July 18, 2007, did not form a nexus or basis to believe that proceeds of illegal drug activity or controlled substances would be found at Defendant's residence at the time of the execution of the search warrant; (3) even if that information from the controlled buys was valid, it was well over thirty days old at the time of the execution of the warrant; and (4) probable cause to search did not exist

based on the trash pull which revealed no evidence of MDMA, as the mere presence of marijuana residue did not suffice to establish probable cause for a search (doc. 52 at 4–6).

The hearing on the motion to suppress took place in two parts due to scheduling conflicts (doc. 76, 77). At the commencement of the hearing, counsel identified several issues that were problematic concerning "the freshness of the warrant, whether it's stale, whether the good faith exception to the exclusionary rule applied and whether [the state and federal officers involved proceeded] with reckless disregard for actual truth of some of the matters asserted" (doc. 76 at 3). Counsel also noted the error in the description of Defendant's vehicle in the search warrant affidavit (*id.* at 4), and the lack of mention of marijuana in the affidavit (*id.* at 5). After the presentation of evidence and testimony counsel argued that law enforcement failed to show that any illegal activity was linked to the inside of the house, citing United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) and United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000)[9] (doc. 77 at 77–78). Counsel argued the staleness of the information from the controlled buy and the fact that the evidence seized from the trash pull did not relate to the sale of MDMA or cocaine (*id.* at 79). He again reiterated the error in the identification of the vehicle involved in the controlled buy, and argued that the CI was an unverified informant, whose reliability had not been substantiated (*id.* at 81).

The Government argued in response that the contents of the search warrant affidavit were supported by evidence, including the items in the trash pull; that the mistake about the vehicle was insignificant; and that the affidavit was supported by probable cause but, if probable cause was lacking, the good faith exception would apply (doc. 77 at 82–83).

The district court specifically found there was "no manipulation or falsity or anything on behalf of law enforcement in this case at all" (doc. 77 at 83). It agreed with the Government that the mistake about the kind of car was insignificant (*id.* at 83–84). It noted that because the transaction in question was a controlled buy, it did not depend on the history or background of the CI (*id.* at 84). It also found that information related to or derived from trash pull was not stale, and that "the trash pull [brought]

_____

[9] Counsel indicated that United States v. Marion was cited in his memorandum in support of the motion to suppress [doc. 53] (doc. 77 at 77), and referenced two additional cases, United States v. Martin and United States v. Bervaldi (*id.* at 78). Bervaldi and Marion were cited in the memorandum, but Martin, presumably United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002), was not.

everything up to date" (*id.*). Finally, the court determined that the good faith exception would apply in this case (*id.*).

On appeal, Defendant challenged the allegedly false statements in the search warrant affidavit, the staleness of the warrant, and the district court's finding of probable cause. 337 F. App'x at 857–58. The Eleventh Circuit found that Defendant failed to show that any statement contained in the search warrant affidavit was false, or even if he had, that any false statement was made intentionally or recklessly; that even if the evidence obtained from the controlled buys was somewhat stale, it was refreshed by the trash pull; and that the search warrant was valid. *Id.*

Because the motion to suppress was thoroughly argued before the trial court and on appeal, the Government argues that Defendant's challenge to counsel's performance in this respect is procedurally barred. Rozier, *supra*; Nyhuis, *supra*. The court agrees that two of the three arguments Defendant makes in this motion are procedurally barred. Defendant's first argument, that counsel should have argued "controlling precedent," is an attempt to re-argue the issue of the staleness of the information concerning the controlled buys that supported the warrant, and as such it is procedurally barred. Similarly, his argument that counsel failed to demonstrate that the affidavit was false is an attempt to re-litigate the district and appellate courts' prior determination about this issue, couched as an ineffective assistance of counsel claim. The second issue he raises, however, regarding the legality of the trash pull, was not raised in his criminal proceedings, at least not as it is raised here, and as such warrants discussion.

The Fourth Amendment permits law enforcement to conduct a warrantless search of garbage left for collection outside the cartilage of a home. California v. Greenwood, 486 U.S. 35, 37 (1988). Defendant now contends that he repeatedly told his attorneys that the trash can searched at his residence was not located on the curb or anywhere near the street, but rather next to his home and out of view from the street (doc. 174-1 at 2). He asserts that counsel told him that the court would not believe his contention that law enforcement had moved the trash can to the street before searching it (doc. 160 at 4). He claims that counsel's conclusion is flawed because (1) there was no reason for the trash can to be out on the street since it was not scheduled to be picked up that day; and (2) he and unidentified others were willing to testify that the trash can was not on the street when the police first arrived. Based on the record evidence in this case, it is Defendant's assertions that are flawed.

At the suppression hearing, investigator Al McDonough testified that the trash pull was conducted from a trash can that was "basically on the right-of-way in front of [Defendant's] house" or "in the gutter" (doc. 76 at 62–63). Law enforcement took pictures of the location of the trash can before it was touched (*id*. at 63). McDonough identified a photograph depicting what he personally observed with respect to the location of the trash can in question on Thursday, November 1, 2007 (*id*.). He reiterated that the photograph was taken before law enforcement searched the can, and that no law enforcement officer had touched or moved the can before it was seized for evidentiary purposes (*id*. at 64). McDonough also noted that the photograph depicted two other similar trash cans out on the street in front of other residences (*id*.). McDonough stated his belief that the date in question was the scheduled trash pickup date for Defendant's subdivision (*id*).

Defendant has offered no evidence to support his statement that the day of the trash pull was not the normally scheduled pick-up day in his area, not even by identifying the normal trash pick-up day. McDonough testified to his belief that trash pick-up was scheduled for the date of the pull, and his testimony is corroborated by the photograph which showed not only Defendant's trash can but also two other cans that were on the street nearby at the time of the search. Second, Defendant has offered no evidence to support his claim that, essentially, McDonough lied about the location of the trash can when law enforcement/EMT arrived. Defendant apparently was not home at the time of the trash pull, and he has not suggested there were any witnesses to the event who may have seen law enforcement move the can as he alleges, much less provided their identities or affidavits. And, even if Defendant did not personally move the trash can to the street for pickup, he has not suggested that it would have been impossible for his girlfriend and co-defendant to have moved the can to the appropriate location for collection.

Counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective

assistance of counsel for failing to preserve or argue meritless issue); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).  Because Defendant has not shown that the trash pull was illegal, counsel was not constitutionally ineffective for failing to make this argument.[10]

### (2) <u>Counsel's Failure to Move for Dismissal of the Indictment</u>

Defendant contends that counsel was constitutionally ineffective because he failed to move to dismiss the indictment based on alleged governmental misconduct.

The sufficiency of the indictment was one of the issues Defendant raised on appeal.  He argued that the district court erred by failing to dismiss the indictment sua sponte in light of the Government's admission that it had presented hearsay and false testimony to the grand jury (doc. 150 at 30–31).  The Eleventh Circuit denied Defendant's claim, noting that the use of hearsay testimony during grand jury proceedings does not invalidate the indictment (*id*. at 31).  It further found that there was no evidence that Agent Cosey's misstatements before the grand jury were intentionally perjurious; the false statements, some of which were immaterial to the return of the indictment, were the subject of questioning at trial; and in light of the convictions on Counts One, Two, and Seven it was "highly improbably that the grand jury indictment was based on insufficient probable cause" (*id*. citation omitted).

Dismissal of an indictment for non-constitutional error  is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." <u>Bank of Nova Scotia</u>, 487 U.S. 250, 256 (1988).  Defendant now argues, contrary to the finding by the Eleventh Circuit, that Agent Cosey's grand jury testimony was "intentionally misleading" (doc. 160 at 6).  The giving of inadvertently false testimony before a grand jury, absent a showing of Governmental misconduct, does not warrant dismissal.  *See* <u>United States v. DiBernardo</u>, 775 F.2d 1470 (11th Cir.

---

[10] Counsel states in his affidavit that he did not argue that the trash pull was illegal because his legal opinion was that Defendant had abandoned the contents of the trash container when he placed it outside of his home (doc. 164-1 at 3).

1985) (dismissal of indictment during which an agent inadvertently gave false testimony was unwarranted). While Cosey's statement to the grand jury that law enforcement discovered MDMA and marijuana in Defendant's residence was inaccurate, there was abundant other evidence presented to the grand jury (i.e., the two controlled buys, the FedEx delivery of cocaine to the residence during the search, and the presence of firearms at the time of the search) to support the indictment. Thus, even if this claim was not procedurally barred, it is without merit.

Defendant also contends that the indictment was subject to dismissal due to the Government's interactions with co-defendant Rudinsky prior to trial (doc. 187 at 18–20). He notes that although Rudinsky was represented by counsel, investigators visited her multiple times at the jail, telling her about Defendant's relationship with other women—including the fact that he had impregnated one of them—in an effort to encourage her to testify against Defendant at trial. The Government argued in its response that there was abundant evidence against Defendant even without Rudinsky's testimony, but Defendant notes that the majority of the other evidence to which the Government refers pertained to the charges of which he was acquitted. The issue raised herein is not the sufficiency of the evidence, but rather whether there was a basis to dismiss the indictment for the alleged Government misconduct. The circumstances described by Defendant, even if true, do not rise to the level of outrageous government conduct warranting dismissal of the indictment. *See, e.g.,* United States v. Jayyousi, 657 F.3d 1085, 1111–12 (11th Cir. 2011) (noting the Eleventh Circuit has never applied the "outrageous government conduct" defense, but that this misconduct must be related to the defendant's charged criminal acts); *see also* United States v. Shaygan, 652 F.3d 1297 (11th Cir. 2011) (remedy for government's failure to reveal that two witnesses were CIs was to re-open cross-examination of these witnesses with an explanation to the jury, not dismissal of indictment); United States v. Jordan, 316 F.3d 1215 (11th Cir. 2003) (district court erred in dismissing indictment for prosecutorial misconduct for alleged withholding or untimely production of evidence); United States v. Shelley, 405 F.3d 1195 (11th Cir. 2005) (government questioning trial witness at trial about "something else" found with a gun, after court ruled in limine that evidence of marijuana found with gun was inadmissible, did not warrant dismissal of indictment). Counsel was not constitutionally ineffective for failing to move to dismiss the indictment, and Defendant is not entitled to relief.

### (3) **Counsel's Violation of the Attorney-client Privilege**

Defendant claims that his first court-appointed attorney, Randall Lockhart, violated the attorney-client privilege by sharing information with the Government. Specifically, Defendant contends he told Lockhart that he had a relationship with a woman named Charity Cox who was likely pregnant with his child. Within days thereafter the Government was "threatening" him that it would prosecute Ms. Cox unless Defendant pleaded guilty, and shortly after that, the Government played a tape recording of a conversation between Defendant and Ms. Cox (in which her pregnancy was mentioned) to co-defendant Danielle Rudinsky (doc. 160 at 8; doc. 174-1 at 2). Defendant asked counsel how the Government came to know about Ms. Cox, and counsel told him that he had mentioned Ms. Cox's name to the AUSA during a discussion about Defendant's case (*id.*). As a result of this, Defendant asked Mr. Lockhart to withdraw from representation. Mr. Lockhart was relieved from representing Defendant on January 8, 2008, just three weeks after Defendant's first appearance, and Defendant retained Barry Beroset (*see* docs. 13, 14, 19). Defendant claims that Lockhart's actions in providing "privileged" information to the Government violated his Fifth and Sixth Amendment rights. He claims that the Government used the information counsel provided to "coerce Danielle Rudinsky to testify against [him] falsely, and to threaten him with an unfounded murder charge if he or Susan Rudinsky testified." The Government failed to address this claim.

The undersigned is not convinced that, even if counsel shared this information with the Government, it had any effect on the prosecution of this case. Assuming, for the sake of discussion only, that Defendant indeed told counsel about this relationship in confidence and counsel revealed the relationship to the Government, the record establishes that Defendant engaged in telephone conversations with Ms. Cox about her pregnancy while he was at the jail. Thus the Government was able to secure recordings of these conversations and obtain the same information independent of counsel's statements. Furthermore, there is no direct causal connection between counsel's alleged sharing of confidential information and Defendant's conviction in this case, and thus no prejudice. Accordingly, Defendant is not entitled to relief.

### (4) Counsel's Failure to Move for Dismissal Based on Government Misconduct

Defendant claims that the Government engaged in misconduct by "improperly threatening and coercing Danielle Rudinsky into testifying falsely against [him]" (doc. 160 at 9). As noted above, the Eleventh Circuit found "no evidence that Rudinsky testified falsely" and, further, that Rudinksy

testified that she was telling the truth and no one had coerced her to testify in a certain way (doc. 150 at 33).  The appellate court also noted the fact that investigators had allegedly "forced" Rudinsky to listen to a taped conversation between Defendant and Charity Cox, who was pregnant with Defendant's child.  While not endorsing the conduct, the court found that it did not rise to the level of conduct engaged in by investigators in a case cited by Defendant in which the court found that the police conduct, "while not commendable . . . [was] not so extreme that it violates a sense of 'fundamental fairness, shocking to the universal justice.'"  *Id.* (citing <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1148 (11th Cir. 1987)).  Finally, the Eleventh Circuit noted that Defendant knew about the investigative methods used by the Government prior to trial, and Rudinsky was cross-examined about these matters, thus allowing the jury to draw its own conclusion about the reliability of her testimony (*id.*).  There was no basis for counsel to move for a dismissal, and he was not constitutionally ineffective for failing to so move.[11]

### (5) **Counsel's Conflict of Interest**

Defendant claims that his trial attorney, Mr. Etheridge, told Defendant that the Government had threatened him with prosecution for unspecified misconduct if he pursued an attack on the Government (doc. 160 at 11).  Defendant asserts that "[w]hether or not the government had a legitimate basis for prosecuting Mr. Etheridge is irrelevant.  Mr. Etheridge could and should have informed the Court (and Mr. Akel) of the threats and asked the Court to conduct a hearing on the matter" (*id.* at 12).

Defendant hired a private investigator, William Anderson Dixon, who spoke to Mr. Etheridge about Defendant's case.  Mr. Etheridge allegedly told Mr. Dixon that the Government had treated him oddly during the case and that he felt intimidated by the Government (doc. 174-1 at 28).  Etheridge also allegedly told Dixon, "I have to practice law here.  If you call me on this, depending on how I feel, I may not be forthright." (*id.*).  When asked to be specific about the alleged threats or intimidation, counsel said that it was "body language and innuendo" and a sense from the Government

---

[11] Defendant also claims that Ms. Rudinsky's mother, Susan Rudinsky, was willing to provide testimony including that she had never had sex with Defendant and that she had been threatened with prosecution for unidentified crimes if she agreed to testify for Defendant.  Defendant's statements are unsupported by any evidence from the elder Ms. Rudinsky herself, and they do not provide a basis for relief.

that if he got in the way, he would be arrested as well (*id*. at 29). Counsel also allegedly stated he felt intimidated by the district judge presiding over the case.

The Assistant United States Attorney who prosecuted the case is the same attorney who prepared the Government's response to Defendant's § 2255 motion, and he notes that he "can state as an officer of the court that no threat was made to defense counsel of any type" (doc. 164 at 16 n.7). Mr. Etheridge also avers that he never told Defendant that the Government was threatening to prosecute him (doc. 164-1 at 3). As such, counsel explains, he never told the trial court of any conflict of interest because he did not believe that he had one (*id*.). Counsel did tell Defendant that (for unspecified reasons) he felt tremendous pressure from the Government from the onset of the case to resolve it by way of a plea (*id*.).

Counsel is, and at the time of Defendant's case was, a licensed member of the Florida Bar in good standing with the bar and this court. Defendant's assertion that counsel's performance of his constitutional duties would, or could, have been altered by the threat of prosecution for some unidentified alleged misconduct strains credulity. Although the prosecution and defense counsel deny any such threat was made, if one had been made—absent any evidence of wrongful acts, or any evidence that counsel was subsequently charged with any offense—there is no reason to believe that a threat of prosecution would deter an attorney from fulfilling his constitutional duty to his client. Defendant has failed to show he is entitled to relief on this ground.

**Ground Two**:

### (2)[12] Failure to Move for a New Jury Panel after Prejudicial Remark by Potential Juror

During jury selection, one of the venire members stated that if Defendant did not testify she would believe that he was guilty. Defendant now claims, despite the fact that this juror was not selected as one of the final panel, that "her remark and belief nonetheless stayed in the minds of the trial jurors" resulting in prejudice to him (doc. 160 at 12).

Defendant offers nothing beyond abject speculation about the effect this juror's remark may have had on others in the courtroom. Regardless, the jury instructions included the express admonition

_____

[12] The first claim in Ground Two, counsel's alleged conflict of interest, was disposed of in the preceding section.

that "if a Defendant elects not to testify, you should not consider that in any way during your deliberations" (doc. 92 at 2), and the jury is presumed to have followed the judge's instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987); Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Calderon, 127 F.3d 1314, 1334 (11th Cir. 1997); *see also* United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Thus, the panel member's comment cannot be presumed to have tainted the jury pool, and as such counsel's failure to request a new venire offers no basis for relief.

Defendant also contends that counsel was constitutionally ineffective because he should have "challenged" several of the jurors who were impaneled. Defendant identifies a Walton County Correctional Officer, two prior victims of burglary, and a prior victim of theft. Defendant insists: "[d]espite any of these jurors' assurances to the contrary, it cannot be expected that these jurors would be or could be fair and impartial" (doc. 160 at 13). Counsel states in his affidavit that the decision to select the corrections officer was a tough call for him and Defendant, but they ultimately decided she was potentially a good juror for the defense, noting that she was smiling and friendly (doc. 164-1 at 4). With respect to the other three jurors, counsel only restates what Defendant alleges: that counsel did not challenge these jurors (*id.*). Certainly, however, if the jurors stated under oath that they could be fair and impartial, there was no basis for counsel to challenge these jurors for cause. Defendant's speculation, in hindsight, that the presence of these jurors on the panel was the reason the jury had such a difficult time reaching a verdict, is just that: speculation. It affords him no relief.

### (3) Failure to Conduct Proper Cross-examination

Defendant contends that counsel did not effectively cross-examine Government witnesses due to counsel's failure to investigate. Defendant's argument is based on unsupported factual and legal conclusions. For instance, he states "had the jury known that Danielle Rudinsky was testifying falsely due to the improper conduct and threats made against her" it would not have believed her testimony (doc. 160 at 14). The Eleventh Circuit found that there was "no evidence that Rudinsky testified falsely" (doc. 150 at 33). Defendant makes a similar blanket assertion about the allegedly false testimony of Detective Spratt, although the Eleventh Circuit noted that the search warrant affidavits did not contain materially faulty information (*id.* at 9). Finally, Defendant's assertion that the "Government intentionally misled the grand jury" and had the jury known this, it would have rejected

Agent Cosey's testimony (doc. 160 at 14) fails, because it is contradicted by the Eleventh Circuit's express finding that Agent Cosey did not commit perjury (doc. 150 at 31), and the fact that the Government corrected Cosey's inadvertent false statements before the grand jury, at trial, by questioning him about them (*id.*; *see also* doc. 134-2 at 167–70). After review of the record, the court finds no "deficiencies" in counsel's conduct, as alleged by Defendant. Further, to the extent there were any such deficiencies, none would have altered the outcome of Defendant's trial in light of the abundant evidence against him. Thus, there is no basis for relief on this ground.

### (4) Failure to Lay a Proper Foundation for Admission of Photograph

During the cross-examination of Agent Cosey, trial counsel attempted to introduce a photograph of two firearms allegedly found inside Defendant's home, which firearms, Defendant asserts, formed the basis for the charge alleged in Count Seven. Defendant asserts that the photograph, a copy of which is not in the record, shows that the weapons were not found in Defendant's home, but rather in a vehicle that was not connected to Defendant. Defendant unsuccessfully raised the issue of the exclusion of the photograph on appeal, and he now cites the Eleventh Circuit's opinion in support of his assertion that counsel was constitutionally ineffective for his failure to lay a proper foundation for the introduction of the photograph (doc. 160 at 15–16). Counsel's affidavit, again restates the fact that the court "refused to allow the proposed defense photographs based on a lack of proper foundation" (doc. 164-1 at 4), but it does not specifically address Defendant's claim. The discussion at trial about the exhibit revealed that it could not be introduced during Agent Cosey's testimony because Cosey himself could not provide the proper predicate for the photograph (doc. 134-2 at 181–184). Defendant does not suggest how the foundation could have been laid (e.g., which witness might have had the knowledge necessary to do so). Furthermore, Defendant's assertion that if the photograph had been admitted, there is a reasonable probability that the jury would have acquitted him not only of the gun charge but of all charges, is spurious in light of the other evidence presented regarding his possession of weapons in the form of the testimony of Aaron Gatchell, James Earl Thompson, and Danielle Rudinsky (doc. 150 at 10, 14, 17). Thus he has not shown that counsel was constitutionally ineffective for his failure to "lay the foundation" for the introduction of the photograph in question.

### (5) Failure to Move for a Mistrial

Defendant contends counsel was constitutionally ineffective because he failed to move for a mistrial. Defendant claims that his entire case was "permeated with repeated and constant incidents of prosecutorial misconduct" (doc. 160 at 16). Counsel's response to this assertion is merely "I did not move for a mistrial" (doc. 164-1 at 4). The court finds after a review of the record that Defendant's assertions of prosecutorial "misconduct" are highly exaggerated interpretations of the record, or simply unfounded. As such, there was no basis for counsel to so move, and trial counsel was not constitutionally ineffective for his failure to do so.

### (6) **Failure to Challenge the *Allen* Charge**

Defendant asserts that the Allen charge given by the court was "far outside the bounds of any justified Allen charge," and thus counsel should have objected to the charge and moved for a mistrial. Defendant admits that an issue concerning the Allen charge was raised on appeal, and the court found that there was no coercive impact of the charge. The current question, Defendant argues, is "whether this court would have granted a mistrial had trial counsel made the proper arguments and made known to this court the controlling precedent on this issue" (doc. 160 at 18). Defendant also claims that the court's Allen charge "varied greatly from the approved instruction." In response to Defendant's assertions, defense counsel notes only that he "did not challenge the court's Allen charge" (doc. 164-1 at 4).

The use of the Allen charge has been long accepted in this circuit. *See, e.g.,* United States v. Elkins, 885 F.2d 775, 783 (11th Cir. 1989) (citing cases). The charge given by the court in Defendant's case for all practical purposes tracks the language in the Eleventh Circuit's 2010 pattern instruction.[13] There are Eleventh Circuit cases (some cited by Defendant in his motion to amend) that have found the pattern Allen charge to be confusing or coercive. *See, e.g.,* United States v. Rey, 811 F.2d 1453, 1459–60 (11th Cir. 1987); United States v. Woodward, 531 F.3d 1352, 1364 (11th Cir. 2008); United States v. Bailey, 468 F.2d 652 (5th Cir. 1972) (court gave Allen charge along with a separate admonitory instruction reminding jurors to abide by their own views of the case). In

---

[13] The court's instruction varied in only minor and insignificant ways from the pattern instruction. For example, it "directed" rather than "asked" the jury to continue deliberating, referred to "other 12 men or women" instead of "twelve people," and referred to the jurors collectively as "your number" instead of "you."

Woodward, the Eleventh Circuit commended the district court for modifying the Allen charge to address some of the concerns raised by the Rey court. Nonetheless, this is not tantamount to saying that either the giving of, or the content of, the Allen charge was inappropriate in this case. 531 F.3d at 1364. And, although the parties were willing to accept a hung jury (doc. 135 at 32), because the jury returned so soon after receiving the Allen charge, the court directed the jurors to continue their deliberations (*id*.). The jury reached a verdict later that day. Defendant has not established that counsel was constitutionally ineffective for his failure to object to the charge.

### (7) Failure to Allow Defendant to Testify

Defendant contends counsel failed to allow him to testify, and that counsel never informed him that the decision whether to testify was Defendant's decision alone. Defendant states that had he been so informed, he would have insisted on testifying. Defendant repeatedly states in one of his sworn affidavits that he was told that he could not testify or he did not know that the decision was his to make (doc. 174-1 at 2, 3, 4, 5). Defense counsel denies Defendant's allegations and states that he has never told a criminal defendant that he or she could not take the stand in his 24-plus years of practicing criminal law (doc. 164-1 at 4). Even if the court accepted for the sake of argument that counsel failed to properly inform Defendant of his right to testify, any error was corrected by the court's colloquy with Defendant in open court about this matter. The court clarified in no uncertain terms that Defendant had the right to testify, that neither Defendant's family nor his attorney could decide for him whether he would testify, and that the decision was one that only Defendant could make (doc. 133 at 347–348). Defendant stated he understood. The court also told Defendant that in the event that defense counsel rested without calling Defendant as a witness, and he wanted to testify, he should wave his hand at the court (*id*. at 348). Similarly, if counsel called Defendant as a witness and he did not want to testify, he was also instructed to wave at the court (*id*.). The court told Defendant that if it did not see any hand waving, that would be an indication that he agreed with whatever decision counsel announced (*id*.). Defendant stated that he understood. There is no indication in the record that Defendant made any attempt to attract the court's attention when counsel rested (*see* doc. 134-2 at 189). Thus, the instant claim that counsel did not "allow" him to testify is frivolous.

### Ground Three:

### (1) Alleged Recantation of Testimony by Co-defendant Rudinsky

Defendant asserts that since his sentencing he has received a letter from co-defendant Danielle Rudinsky in which she purportedly admits that her testimony at trial was false. According to Defendant, these post-trial statements invalidate both his conviction and the application of the leadership enhancement, as it was Ms. Rudinsky's testimony that supported each. No such letter was attached to the initial motion and memorandum. There is a letter from "Danielle," addressed to a "Troy,"[14] attached to the reply (doc. 174-1 at 12–13). This letter, which may be the letter to which Defendant referred, is by no means a full-scale recantation of Rudinsky's testimony at trial. Furthermore, the statements made in the letter were made only to "Troy"; they were neither made under oath nor subject to cross-examination at trial. Thus this letter does not call into question either Defendant's conviction or the application of the leadership role enhancement,[15] the latter of which needed only to be proven by a preponderance of the evidence (*see* United States v. Carillo-Ayala, 713 F.3d 82, 86 (11th Cir. 2013) (citing United States v. Hernandez, 145 F.3d 1433, 1440 (11th Cir. 1998)).

### (2) Application of Amendment 709

Defendant asserts that "Amendment 709 to the Sentencing Guidelines precludes the two-level enhancement to [his] criminal history points" (doc. 156 at 7).[16] Even if Defendant's criminal history points were enhanced by two levels, the enhancement would have had no effect on his sentence because Defendant's criminal history became VI under § 4B1.4(c)(2) due to his status as an armed career criminal. He is not entitled to relief on this ground.

### (3) Armed Career Criminal Status

---

[14] Troy is not the same person as Defendant; Defendant is, however, presumably the "Tony" referenced in the body of the letter.

[15] The Government also notes that the probation office had evidence that Defendant had been corresponding with Rudinsky and her family in an effort to secure false testimony even before trial began, and it argues that as a result any correspondence between the two co-defendants (or alleged recantation by Rudinsky) is suspect (doc. 164 at 17–18 (citing PSR ¶¶ 51–52)).

[16] Amendment 709 addresses the computation of criminal history scores under U.S.S.G. § 4A1.1 in two areas: (1) the counting of multiple prior sentences as single or separate sentences, and (2) the counting of certain misdemeanor or petty offenses.

Defendant contends that intervening Supreme Court case law precludes application of the armed career criminal enhancement to his case. Defendant cites <u>Carachuri-Rosendo v. Holder</u>, 560 U.S. 563 (2010), asserting that it stands for the proposition that "a specific defendant's conviction is the starting place when determining whether a conviction is an 'aggravated felony' for purposes of removal proceedings, not what that defendant could have been charged with" (doc. 160 at 22). The holding in that case, however, is not retroactively applicable on collateral review. *See, e.g.,* <u>Trice Bey v. Warden, FCI Bennettsville SCDC</u>, 511 F. App'x 941 (11th Cir. 2013); <u>United States v. Powell</u>, 691 F.3d 554, 559–60 (4th Cir. 2012). Even if it were, Defendant would not be entitled to relief.

Title 18 U.S.C. § 924(e)(1) provides that an individual who has three previous convictions for a violent felony, which offenses were committed on occasions different from one another, is subject to enhanced penalties. Burglary is specifically enumerated as a violent felony. *See* 18 U.S.C. § 924(e)(2)(B). Defendant's PSR reflects that he pleaded nolo contendere on September 29, 1998 to three counts of Burglary of a Dwelling with Assault or Battery (PSR ¶¶ 73–75). The three incidents occurred on February 21, March 5, and March 9, 1998 (*id.*). Thus, Defendant was properly classified as an armed career criminal and subjected to the sentencing provisions of § 4B1.4 of the guidelines. <u>Carachuri-Rosendo</u> has no impact on his case.

### **(4) <u>Waiver of the Right of Allocution</u>**

Defendant asserts that his "waiver" of his right to allocution was unknowing and involuntary and a result of ineffective assistance of counsel. At sentencing, after hearing argument from counsel, the court stated: "Then it's the judgment of the court that you be committed to the custody – well, I guess I need to first see if Mr. Akel has anything to say before sentence is imposed?" (doc. 126 at 27). Defendant responded "No, your Honor" (*id.*). Defendant now asserts that neither of his sentencing attorneys informed him of the right of allocution, or of the importance of making a statement to the court, and as such his sentence should be vacated and his case set for re-sentencing. The lone case cited by Defendant in support of his claim, <u>United States v. Prouty</u>, 303 F.3d 1249, 1252 (11th Cir. 2002), held that a district court's denial of the right of allocution is reversible error where a defendant was not afforded the opportunity to allocute and the court did not impose the lowest sentence under the guidelines. <u>Prouty</u> is distinguishable from Defendant's case, in that <u>Prouty</u> involved a direct appeal, and prejudice was presumed when the defendant was not permitted to allocate. Prejudice is

not presumed in a collateral proceeding. *See* <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (on collateral review, a defendant must establish actual prejudice based on the denial of the right to allocate; prejudice is not presumed). Second and more important, there was no denial of Defendant's right of allocution in this case, in contrast with the situation in <u>Prouty</u>. When the court asked Defendant if he had anything to say, he responded in the negative.

Sentencing counsel Marcia Shein notes in her affidavit that to the best of her recollection "everyone agreed including Mr. Akel, that he should not say anything to the court at sentencing in light of the fact that he vehemently maintained his innocence and was appealing his case" (doc. 164-1 at 9). Defendant offers no specific suggestion as to what he would have told the court. He states that if he "had known about the importance of allocution" he "would have made a statement to the court regarding the circumstances of [his] case and [his] life" (doc. 174-1 at 5), without indicating precisely what he might have stated that would have swayed the court's sentencing decision.

The court's statements at sentencing reflect a thorough consideration of the record. Certainly, it had the opportunity to hear the evidence at trial and read Defendant's PSR. In sentencing Defendant at the high end of the applicable guidelines range the court cited "aggravating factors, history and characteristics"; it found the sentence to be "reasonable and necessary"; and finally it noted that it had considered everything Defendant had presented but that the "dangerousness and the need to protect society from further criminal conduct" outweighed Defendant's arguments in mitigation (doc. 126 at 27–29).

Defendant's suggestion that had he chosen to say anything he would have received a different sentence is mere speculation. He has not established constitutionally deficient performance by counsel.

**Ground Four**:

Defendant contends that his decision to proceed pro se on appeal was neither knowing or voluntary because the court failed to conduct a hearing warning him of the dangers of proceeding pro se. He now contends that had he been so informed, he would have "exercised his sixth amendment right to representation by effective counsel" (doc. 156 at 8).

At sentencing, Defendant was represented by not one, but two retained attorneys. Ms. Shein told the court that she had been retained by Defendant's father to represent him on appeal (doc. 126

at 29). Thus, there was no basis for the district court to hold any kind of <u>Faretta</u>[17] hearing, because it was not until jurisdiction over Defendant's case had been transferred to the Eleventh Circuit Court of Appeals that he made his request to proceed pro se.

Neither party has cited a case involving a defendant who was represented at trial who changed course after a notice of appeal was filed and elected to proceed pro se. *Cf.* <u>Anderson v. United States</u>, 948 F.2d 704, 706 n.3 (11th Cir. 1991) (noting that once Defendant had requested counsel on appeal he had waived any right he had to proceed pro se); <u>United States v. Tapia</u>, 205 F.3d 1349 (8th Cir. 2000) (affirming district court's denial of defendant's request to proceed pro se on appeal). To the extent Defendant suggests that the appellate court erred in not remanding the case for consideration of Defendant's request that he be allowed to proceed pro se, it is not the province of this court to assign error to a superior court.[18]

### Defendant's Motion to Amend

Also before the court is Defendant's motion to amend his pending § 2255 motion (doc. 187). In responding to Defendant's motion to amend, the Government noted, correctly, that Defendant's allegations are largely reiterations of the claims and allegations made in the original (pending) § 2255 motion, with one exception (*see* doc. 190). And, while not stated directly, the Government appears

---

[17] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

[18] The court notes that the record is clear that Defendant did not proceed on appeal without any assistance or direction from counsel. The affidavit of attorney Marcia Shein and the numerous attachments thereto, reflect the efforts made on Defendant's behalf (doc. 164-1 at 7–186). Counsel explained to Defendant why certain arguments were rejected, provided an analysis of case law given to her by Defendant, and provided copies of Defendant's suppression hearing, trial and sentencing transcripts to him, as well as a "final" copy of an appellate brief rasing the issues that counsel thought had the best chance of success, part of which Defendant included in his pro se brief. Once Defendant's dissatisfaction became abundantly clear, counsel also provided advice about what Defendant would have to do to proceed pro se and his options for proceeding with his appeal. Defendant does not appear to have been satisfied with any of his retained attorneys. However, the fact that any given lawyer was unable to secure the outcome Defendant desired is not proof of said attorney's ineffectiveness. The court cannot help but question whether Defendant's attitude towards his attorneys and their performance was an attempt to manipulate the proceedings. <u>United States v. Kimball</u>, 291 F.3d 726, 730–31 (11th Cir. 2002) (identifying factors to be considered in analyzing a criminal defendant's request to proceed pro se, including whether the defendant was attempting to manipulate the trial).

to have no objection to the court's consideration of Defendant expanded arguments and additional claim (*id.*).  To that extent, then, Defendant's arguments have been considered by the court in its analysis of his claims.  The only "new" ground for relief is Defendant's assertion that he is entitled to relief based on the Supreme Court's recent decision in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013).

Defendant asserts in his proposed amended motion that he is no longer an armed career criminal in light of the Supreme Court's decision in <u>Alleyne</u>, which he contends is "on all fours" with his case.  Defendant is mistaken.  Even if <u>Alleyne</u> were applicable to the facts of Defendant's case, it is not retroactively applicable on collateral review.  *See, e.g.,* <u>United States v. Redd</u>, 735 F.3d 88 (2d Cir. 2013); <u>In re Kemper</u>, 735 F.3d 211 (5th Cir. 2013); <u>Simpson v. United States</u>, 721 F.3d 875 (7th Cir. 2013); <u>United States v. Stewart</u>, No. 13-6775, 2013 WL 5397401 (4th Cir. Sept. 27, 2013); <u>In re Payne</u>, 733 F.3d 1027 (10th Cir. 2013).   Thus it affords Defendant no relief.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Defendant's motion to amend his § 2255 motion (doc. 187) is **GRANTED** to the extent the court has considered the arguments raised therein in its analysis of the instant § 2255 motion.

And based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 156), as supplemented by doc. 187, be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>13</u><sup>th</sup> day of December 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u>  **A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>**United States v. Roberts**</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**